OPINION
{¶ 1} Dajuan Deloach appeals from a decision of the Montgomery County Court of Common Pleas, which denied his motion to withdraw his no contest pleas to possession of cocaine and having weapons while under disability. A hearing was held on his motion on December 27, 2005, following which the trial court orally denied the motion and proceeded to sentence Deloach. Deloach also challenges his sentence, pursuant toState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. For the following reasons, the denial of Deloach's motion to withdraw his pleas will be affirmed. Per Foster, however, his sentence will be reversed and the case remanded for resentencing.
 I {¶ 2} According to the record, on October 27, 2004, Deloach was indicted for possession of cocaine in an amount which equaled or exceeded 5 grams but was less than 25 grams, possession of criminal tools, and having weapons while under disability. These charges stemmed from a drug raid at a house at which Deloach was present. On October 27, 2005, he pled no contest to possession of cocaine and to having weapons while under disability. In return, the State dismissed the possession of criminal tools charge. The court ordered a pre-sentence investigation and scheduled Deloach's sentencing for December 1, 2005 at 9:00 a.m..
 {¶ 3} Although the record reflects that counsel and the court discussed Deloach's possible sentence prior to sentencing, the content of those conversations is not in the record. The State represents that, on December 1, 2005, Deloach's counsel learned of the court's intention to sentence him to three years in prison. That day, Deloach requested a continuance of the sentencing hearing, which was granted. The following week, sentencing was again continued at Deloach's request. According to the State, on December 13, 2005, Deloach's counsel again learned from the court that it intended to sentence Deloach to three years of incarceration.
 {¶ 4} On December 15, 2005, the third scheduled date for the sentencing hearing, Deloach filed a motion to withdraw his pleas. He asserted that he did not knowingly, intelligently, and voluntarily enter his pleas because he was confused and unsure during the plea hearing. He also claimed that he believed that he would get community control sanctions.
 {¶ 5} On December 27, 2005, the court held a hearing on Deloach's motion, during which Deloach was the only witness. He testified that he was married, had three children, and was an assistant chef at the Dayton Racquet Club. He explained his reasons for wanting to withdraw his pleas as follows:
 {¶ 6} "At the time that I was talking to Mr. Gabel about the case I had a lot of difficulties, stress on my mind because I didn't understand fully what was really going on because I didn't know that, you know, when they arrest you and let you go, I thought that, you know, they maybe just missed the case at the time. Actually when my parole officer told me I had a warrant — I was driving or something like that. I didn't realize the seriousness of the case. Basically, to salvage my job and, you know, my marriage Mr. Gabel told me I had a strong possibility of getting probation for the case so I kinda (sic), you know, rushed — rushed my decision to go ahead and plea out to weapons under disability and possession of cocaine. Honestly, it wasn't what I wanted to do at the time because I do feel like I am innocent. I do feel like I deserve an opportunity to prove my innocence in trial. That's it."
 {¶ 7} Deloach admitted that he was at the house at the time of the raid, but he claimed that he was there to borrow money from the resident, who was a friend. Deloach denied that he was at the house for the purpose of drugs and that he had brought a gun to that location. He asserted that he has remained free of drugs during the last year and a half and has had no problems with his parole. Deloach testified: "I just want to save my job because honestly I feel like I probably will never get the opportunity again." Deloach acknowledged that his trial counsel had not promised him community control but had indicated that it was a "strong possibility." On cross-examination, the prosecutor reviewed the court's questions of him during the plea hearing, and Deloach acknowledged that he had been informed of his rights, that he had answered affirmatively when asked if he understood them, and that he had not asked any questions when given the opportunity to do so.
 {¶ 8} Following argument by counsel, the court denied Deloach's motion to withdraw his pleas. The court found that "this is clearly a motion that's predicated on change of heart as opposed to any kind of legal grounds that would cause the court to overturn the plea that was knowingly, voluntarily and intelligently made on the record." The court found that it had complied with the requirements of Crim.R. 11 and that the motion was filed only after Deloach was advised of the likely sentence in his case. The court then pronounced a sentence of three years in prison for having a weapon while under disability and of twelve months in prison for possession of cocaine, to be served concurrently. We note that the court's termination entry imposed a two-year, rather than three-year, sentence for having a weapon while under disability.
 II {¶ 9} Deloach raises two assignments of error on appeal.
 {¶ 10} I. "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DELOACH'S MOTION TO WITHDRAW HIS NO CONTEST PLEA."
 {¶ 11} In his first assignment of error, Deloach claims that the trial court erred in overruling his motion to withdraw his no contest pleas.
 {¶ 12} A motion to withdraw a plea of guilty or no contest is governed by Crim.R. 32.1, which states:
 {¶ 13} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 14} The Ohio Supreme Court has ruled that a trial court should "freely and liberally grant" a presentence motion to withdraw a guilty plea, provided that the defendant provides a reasonable and legitimate basis for the withdrawal. State v. Xie (1992), 62 Ohio St.3d 521,526-27, 584 N.E.2d 715. However, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." Id. at paragraph one of the syllabus. A decision to allow the withdrawal of a guilty plea before sentencing is within the sound discretion of the trial court. Id. at paragraph two of the syllabus.
 {¶ 15} In reviewing whether the trial court abused its discretion, we apply the following factors: "(1) whether the accused was represented by highly competent counsel; (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea; (3) whether a full hearing was held on the withdrawal motion; and (4) whether the trial court gave full and fair consideration to the motion." State v. McNeil (2001),146 Ohio App.3d 173, 176, 765 N.E.2d 884, citing State v. Peterseim (1980),68 Ohio App.2d 211, 214, 428 N.E.2d 863. A change of heart or mistaken belief about his plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw his plea. State v. Lambros (1988),44 Ohio App.3d 102, 103, 541 N.E.2d 632. Moreover, a defendant generally is not allowed to withdraw his plea prior to sentencing just because he is made aware that a subjectively unexpected sentence is going to be imposed. State v. Uribe (Mar. 5, 1999), Montgomery App. No. 17044 (citations omitted).
 {¶ 16} On appeal, Deloach argues that the trial court failed to give full and fair consideration to his motion. Deloach argues that the trial court improperly found that his motion was engendered only after he learned of his likely sentence and that he had to provide some "legal grounds" for the withdrawal. He argues that there is no evidence that the State would suffer prejudice as a result of the withdrawal, and that he had a meritorious defense to the charges, i.e., that the gun and drugs were not found in the room in which he was arrested. Deloach cites to State v. Cuthbertson, 139 Ohio App.3d 895, 2000-Ohio-2638,746 N.E.2d 197, to support his assertion that a change of heart, coupled with a lack of prejudice to the State, warranted the granting of his motion.
 {¶ 17} Upon review of the record, we find no error in the trial court's ruling. The court provided Deloach a hearing on his motion to withdraw his pleas and permitted him to call witnesses in support of his motion. At the hearing, Deloach testified that he wanted to withdraw his pleas so that he could keep his job at the Dayton Racquet Club and save his marriage. He expressed his fear that he would not get another similar opportunity. Although Deloach was not sentenced prior to filing his motion, it appears undisputed that Deloach's counsel learned after the plea but before his sentencing that the court intended to impose a three-year prison sentence. Based on the foregoing, the court could have reasonably concluded that Deloach merely had a change of heart regarding his decision to enter a plea. As stated above, we have repeatedly stated that a change of heart, without some additional justification, is not a sufficient basis for the withdrawal of a guilty or no contest plea, especially where the defendant has become aware that the sentence is likely to be greater than was anticipated at the time of the plea. E.g.,State v. Lellock, Greene App. No. 2005-CA-141, 2006-Ohio-4515, ¶ 10;Lambros, 44 Ohio App.3d at 103.
 {¶ 18} Deloach also contends that he is innocent and thus has a meritorious defense to the charges. Although Deloach claimed at the hearing on his motion to withdraw that he was merely at the house to borrow money and that he was "at the wrong place at the wrong time," there is nothing in the record to suggest that he became aware of any difficulties in the State's proof or of potentially exculpatory evidence after he pled no contest which would have altered his decision to enter a plea. Again, the record reflects that Deloach merely experienced a change of heart. See Lellock at ¶ 11-12. Under these circumstances, the trial court did not abuse its discretion in denying Deloach's motion to withdraw his pleas.
 {¶ 19} The first assignment of error is overruled.
 {¶ 20} II. "THE TRIAL COURT ERRED WHEN IT SENTENCED DELOACH UNDER UNCONSTITUTIONAL LAWS."
 {¶ 21} In his supplemental assignment of error, Deloach claims that the trial court improperly sentenced him to more than the minimum sentence under R.C. 2929.14(B), which was held unconstitutional inFoster in accordance with Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403. The State responds that Foster was decided after Deloach was sentenced, and that Deloach failed to raiseBlakely in the trial court, thus waiving the argument.
 {¶ 22} Foster requires that any pre-Foster sentence to which the statutorily required findings of fact applied (i.e., nonminimum, maximum and consecutive sentences), which was pending on direct appeal at the time that Foster was decided, must be reversed and remanded for resentencing, because judicial fact-finding violates a defendant's Sixth Amendment right to a trial by jury. State v. Burgess, Montgomery App. No. 21315, ¶ 5. We have followed this mandate in all pending cases — regardless of whether Blakely was raised in the trial court — when the sentence has been challenged on direct appeal. Because Deloach's direct appeal of his conviction and sentence was pending at the timeFoster was decided, his sentence must be reversed and his case remanded for resentencing.
 {¶ 23} The second assignment of error is sustained.
 {¶ 24} The denial of Deloach's motion to withdraw his pleas is affirmed. Pursuant to Foster, his sentence is reversed and the cause remanded for resentencing.