[Cite as *In re Guardianship of Rhinehart*, 2020-Ohio-7005.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| GUARDIANSHIP OF ROBIN ALYCE RHINEHART | : | **CASE NO. 2020-P-0047** |
| | : | |
| | : | |

Civil Appeal from the Portage County Court of Common Pleas, Probate Division, Case No. 2019 GD 00030.

Judgment: Affirmed.

*Thomas C. Loepp*, Thomas C. Loepp, Law Offices, Co., LPA, 3580 Darrow Road, Stow, OH 44224 (For Appellants, Jaclyn Palumbo and Joseph Rhinehart).

MATT LYNCH, J.

{¶1} Appellants, Attorney Jaclyn Palumbo and Joseph Rhinehart, appeal the decision of the Portage County Court of Common Pleas, Probate Division, vacating an order authorizing the expenditure of guardianship funds for attorney fees and ordering the return of funds to the guardianship which the court had previously authorized to be expended. For the following reasons, we affirm the decision of the court below.

{¶2} On July 24, 2019, Joseph Rhinehart ("Rhinehart") was appointed Guardian of the Person and Estate of Robin Alyce Rhinehart ("the ward"). Rhinehart was represented by Attorney Palumbo. At the same time, Attorney Heather Gyekenyesi was appointed Limited Guardian of the Person and Estate of the ward for the purpose of a

divorce action pending between the ward and Edward L. Rhinehart, Jr. The ward was represented in the divorce action by Attorney Amanda Lewis.

{¶3} On November 27, 2019, Rhinehart filed an Application for Authority to Expend Funds, seeking authority to make the following expenditures for the best interest of the ward:

> REIMBURSEMENTS:
> Legal fees for original guardian action - Reimbursement to Guardian Joseph Rhinehart * * * - $1,000.00
> Bond fees for Guardian Joseph Rhinehart * * * - $310.00
> Receipts of groceries and medication payable to caretaker Rachel Guido * * * - $431.85
> Caretaker fees payable to Rachel Guido from August 1, 2019 to present * * * - $2,000.00
> Lease agreement fees payable to Rachel Guido from August 1, 2019 to present * * * - $2,400.00
> INVOICES:
> Invoice of Divorce Attorney Amanda Lewis, with a request for replenishment of retainer * * * - $3,624.00
> Invoice of Guardian['s] Attorney Jaclyn Palumbo, with a request for replenishment of retainer * * * - $8,075.00
> BUDGET OF WARD:
> Medication costs - $174.66 ($127.55 for scripts every 3 months & $132.15 for monthly scripts * * *
> Cost of clothes monthly - $50.00/month
> Groceries - $200.00/month
> Caretaker reimbursement monthly moving forward * * * - $500.00 per month
> Lease agreement monthly moving forward * * * - $600.00 per month
> Cost of respite/adult day services - $86.00/day through Sarah Care in Stow; 8 days per month - Total would be $688.00 per month

{¶4} On December 4, 2019, the probate court entered an Order Authorizing Expenditure of Funds, stamped with the signature of Probate Judge Robert W. Berger.

{¶5} On December 17, 2019, Rhinehart filed a second Application for Authority to Expend Funds, seeking the authority to expend the following funds for the best interest of the ward:

2

REIMBURSEMENTS:
$341.50 - reimbursement to Caretaker Rachel Guido for purchasing new glasses for the Ward * * *
INVOICES:
Invoice of Guardian's Attorney Jaclyn Palumbo, with a request for replenishment of retainer * * * - $4,286.01
BUDGET OF WARD:
Allow the Guardian to reimburse the Ward's Caretaker, Rachel Guido, up to $7,500.00 per year for medical expenses not covered by insurance (i.e. Co-pays, eyeglasses, etc.)
Authority of Guardian to reimburse any attorneys involved in this matter with proof of an invoice (i.e., Attorney Jaclyn Palumbo, Attorney Amanda Lewis, Attorney Heather Gyekenyesi)

{¶6} On December 18, 2019, a Magistrate's Order was issued scheduling a hearing on the Application for Authority to Expend Funds filed on "December 18, 2019" (sic).

{¶7} On January 6, 2020, a hearing was held on the Application before a magistrate of the probate court. The magistrate explained the court's position as follows:

> This Court had an opportunity to review the application and also the history of this case, and I set it for a hearing because the Court has some concerns regarding how much money this has cost the Ward so far.
>
> From my review it looks like the Court approved, and erroneously I might add, approved $8,075 of attorney's fees for Attorney Palumbo. Also approved $1,000 reimbursement to the applicant [Rhinehart] for attorney's fees so it appears that this Court has approved $9,075 in attorney's fees for Attorney Palumbo.

{¶8} On January 8, 2020, a Magistrate's Decision was issued that ruled: "The December 17, 2019, Application for Authority to Expend Funds * * * to 'replenish the retainer' and to pay any future attorney fees for Attorney Palumbo is Denied. The remaining requests contained in the December 17, 2019, Application are granted." The magistrate noted that, on December 4, 2019, the probate court "authorized the expenditure of funds, which amounts to approximately $36,506 annually (excluding

3

Attorney Palumbo's fees)," while the "Ward's annual income is $21,420." The magistrate also noted that the "Guardian appears to be in extensive contact with Attorney Palumbo" and that "this Guardianship has required a hands-on approach due to the needs and limited skills of the Guardian."

{¶9} On January 9, 2020, Attorney Palumbo filed a Motion to Withdraw as counsel for Rhinehart on the grounds that he "has been unable to pay Counsel's legal fees."

{¶10} On January 15, 2020, a Magistrate's Order was issued ordering Attorney Palumbo to "return the Eight Thousand Seventy-Five Dollars ($8,075.00) previously received, to the Guardianship Account."

{¶11} On January 21, 2020, Attorney Palumbo filed an Objection to the Magistrate's Decision, and, on January 24, 2020, a Motion to Set Aside Magistrate's Order.

{¶12} On February 25, 2020, a hearing was held on the Objection and Motion to Set Aside.

{¶13} On April 21, 2020, the probate court issued its Journal Entry, overruling both the Objection and Motion to Set Aside and vacating the December 4, 2019 Order Authorizing Expenditure of Funds. The court explained:

> The past practice of the Portage County Probate Court was to have a Magistrate review and initial the Application. The Clerk then would stamp the Judge's name to the Order or the Judge would sign the Order to Expend Funds. In this case Judge Berger neither saw the Application nor Authorized the Expenditure of Funds. The purported authorization by Judge Berger is a nullity and should be held for naught.
>
> As such, the stamping of the Judge's signature without review is similar to ORC 2701.18 and the Court shall deem the entry of

4

November 27, 2019 [sic] as a clerical error and void.

The Guardian or attorney should be allowed to file a Motion or Application for attorney fees and a hearing shall be held on the matter.

{¶14} On May 18, 2020, Attorney Palumbo and Rhinehart filed a Notice of Appeal. On appeal, they raise the following assignments of error:

{¶15} "[1.] The trial court erred and abused its discretion in permitting a magistrate to review and, essentially, overrule a judge's decision."

{¶16} "[2.] The trial court erred and abused its discretion in vacating and holding for naught the November 27, 2019 Order [sic]."

{¶17} "[3.] Neither the Magistrate nor the Trial Court Judge entered a proper *nunc pro tunc* order."

{¶18} "[4.] The need for finality outweighs any desire to make corrections."

{¶19} All the assignments of error challenge the probate court's decision to vacate the December 4, 2019 Order Authorizing Expenditure of Funds and, therefore, will be considered jointly. Whether a judgment may be vacated as void or corrected as a clerical mistake is a question of law subject to plenary or de novo review. *Ostanek v. Ostanek*, 2020-Ohio-3930, 156 N.E.3d 932, ¶ 36 (11th Dist.) ("[w]hether a judgment is void is a question of law this court reviews de novo"); *Monroe v. Forum Health*, 11th Dist. Trumbull No. 2012-T-0026, 2012-Ohio-6133, ¶ 25 ("in applying civil rules, including Civ.R. 60(A), this application 'is a question of law, which we review de novo'") (citation omitted). The decision to correct a clerical mistake, however, is within the discretion of the trial court. *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100, 671 N.E.2d 236 (1996).

{¶20} It is generally recognized that "[t]he authority to vacate a void judgment * *

5

* constitutes an inherent power possessed by Ohio courts." *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph four of the syllabus; *Baldesari v. Baldesari*, 6th Dist. Lucas No. L-10-1199, 2011-Ohio-2957, ¶ 65 ("[t]he inherent power of a court to vacate its own judgment is limited to orders that are void"). "[A] void judgment is one entered by a court lacking subject-matter jurisdiction over the case or personal jurisdiction over the parties." *State v. Hudson*, __ Ohio St.3d __, 2020-Ohio-3849, __ N.E.3d __, ¶ 11. In no way does the December 4, 2019 Order accord with this traditional understanding of what constitutes a void judgment. *Miller v. Nelson-Miller*, 132 Ohio St.3d 381, 2012-Ohio-2845, 972 N.E.2d 568, ¶ 17 ("the lack of a valid signature is an irregularity that has no bearing on the subject-matter jurisdiction of the trial court and renders the judgment voidable rather than void"); *Brewer v. Gansheimer*, 11th Dist. Ashtabula No. 2001-A-0045, 2001 WL 1182934, * 2 ("courts which have considered this specific issue have rejected the conclusion that this type of defect has the effect of rendering a judgment void," rather "the lack of a signature is an irregularity or defect which has no effect upon the jurisdiction of the trial court").

{¶21} It is also generally recognized that "a trial court lacks authority to vacate or modify a final judgment, sua sponte, without a written motion under Civ.R. 60(B) seeking relief from judgment." *InFrasys, Inc. v. Bros. Pavement Prods., Corp.*, 2020-Ohio-1157, 152 N.E.3d 1274, ¶ 22 (6th Dist.); *State v. Jones*, 2018-Ohio-954, 108 N.E.3d 737, ¶ 18 (8th Dist.) ("a trial court has no authority to sua sponte vacate or modify its final orders"). The December 4, 2019 Order constitutes a final order, pursuant to R.C. 2505.02(B)(2) inasmuch as it affects a substantial right made in a special proceeding. *In re Emergency Guardianship of Stevenson*, 9th Dist. Medina No. 04CA0036-M, 2005-Ohio-997, ¶ 8 ("[a]

6

judicially appointed guardianship is a special proceeding"); *In re Guardianship of Jadwisiak*, 64 Ohio St.3d 176, 183-184, 593 N.E.2d 1379 (1992) (an order that affects an attorney's "right to compensation" affects a substantial right); *see, e.g., In re Guardianship of Derakhshan*, 110 Ohio App.3d 190, 192, 673 N.E.2d 954 (11th Dist.1996) (appeal "from a judgment * * * which overruled appellant's application for authority to expend funds from a guardianship estate"); *Estate of Pledgure by Pledgure v. Stucki*, 5th Dist. Stark No. CA-8493, 1991 WL 207897, *1 ("appeal from a judgment * * * that authorized the expenditure of funds from the estate of * * * an incompetent person, for payment of attorney fees").

{¶22} Civil Rule 60(A) provides: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders." "As construed by the Supreme Court of Ohio, 'Civ.R. 60(A) permits a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not authorize a trial court to make substantive changes in judgments.'" *Bloom v. Bloom*, 11th Dist. Trumbull Nos. 2019-T-0078 and 2019-T-0080, 2020-Ohio-4107, ¶ 35, citing *Litty*, 77 Ohio St.3d at 100, 671 N.E.2d 236. "This court has stated that '[t]he basic distinction between clerical mistakes that can be corrected under Civ.R. 60(A) and substantive mistakes that cannot be corrected is that the former consists of "blunders in execution" whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because on second thought, it has decided to exercise its discretion in a different manner.'" (Citation omitted.) *Id.* at ¶ 36.

{¶23} The situation involving the December 4, 2019 Order is unique in that the purported error was not in the Order but in the fact that the Order was issued at all – the blunder was not in the execution but was the execution. The probate court's explanation that the Order was stamped "erroneously," i.e., without due consideration, suggests the sort of error "mechanical in nature * * * which does not involve a legal decision or judgment" the Supreme Court found subject to correction in *Litty*. In the language of the *Bloom* decision, the vacation of the December 4 Order reflects the court's actual intention rather than a reconsideration of its decision. *Bloom* at ¶ 37.

{¶24} Likewise, the existing case law treats such errors as the sort of errors that may be corrected under Civil Rule 60(A). For example, in *Kuczak v. Binkley*, 2d Montgomery No. 22732, 2008-Ohio-6043, the trial court "inadvertently" granted a party's motion for relief from judgment and subsequently vacated its ruling granting relief:

> In its February 28, 2008 order, the trial court stated that it had "inadvertently granted Defendant's Motion to Vacate Judgment." As a result, the trial court vacated its February 27, 2008 entry sustaining Binkley's Civ.R. 60(B) motion and set the motion for a hearing. Upon review, we construe the trial court's February 28, 2008 order as one correcting a clerical mistake under Civ.R. 60(A). Accordingly, the trial court acted within its discretion in vacating its prior granting of relief from the default judgment.

*Id.* at ¶ 8.

{¶25} Similarly, in *McDonald v. Tucker*, 2d Dist. Montgomery No. 17107, 1999 WL 959209, the trial court "inadvertently" entered judgment in favor of one party and subsequently entered a corrected entry finding in favor of the other party:

> If the trial court's November 24, 1997 decision and entry, in favor of Tucker, was entered as a result of clerical error, it was entitled to enter the judgment it originally intended to enter, in favor of McDonald, on its own initiative and without notice to Tucker.

The December 9, 1997 decision and entry and the February 4, 1998 decision and judgment make it clear that the December 5, 1997 judgment in favor of McDonald was entered to correct a clerical error rather than because of a change of heart as to the merits of the case. It is obvious from looking at the November 24 and December 5, 1997 entries that they are form entries typically utilized in high volume courts. The inadvertent entry of a defendant's judgment when a plaintiff's judgment was intended is readily imaginable. We have no reason to question the veracity of the magistrate and trial judge, and the record provides no basis to do so.

*Id.* at *3. *See, also,* 2 Klein, Darling, and Terez, *Baldwin's Ohio Practice Civil Practice*, Section 60:4 (Sept.2019) (cases cited).

{¶26} We are cognizant of the appellants' arguments that the need for finality should outweigh the probate court's desire to make corrections. In the present case, the need for finality does not render the court's vacation of the December 4 Order an abuse of discretion. At the time the Application for attorney fees was filed on November 27, 2019, no account or inventory for the estate had been filed. The Application sought reimbursement for legal services already rendered. Attorney Palumbo's representation of Rhinehart was not undertaken in reliance upon the court's approval of her fees. Moreover, the court's April 21, 2020 Entry does not foreclose the recovery of attorney fees but directs that they "may be sought by Motion to the Court upon hearing."

{¶27} The assignments of error are without merit.

{¶28} For the foregoing reasons, the decision of the probate court is affirmed. Costs to be taxed against the appellants.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur in judgment only.

9